507 A.2d 924

Rosemary Callahan, Petitioner *v.* Workmen's Compensation Appeal Board (Pet Inc., Whitman's Chocolates), Respondents.

Argued December 9, 1985, before Judges ROGERS and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Mark R. Cuker, Wapner, Newman & Associates,* for petitioner.

*Marshall A. Halslup, III,* with him, *Joseph S. Bekelja, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer,* for respondent, National Union Fire Insurance Company of Pittsburgh.

*Steven C. Tulliver,* with him, *J. Davy Yockey,* for respondent, Pennsylvania Manufacturers' Insurance Corporation.

. OPINION BY SENIOR JUDGE BARBIERI, April 15, 1986:

This is a workmen's compensation case wherein the Claimant, Rosemary Callahan, petitions for review of an order of the Workmen's Compensation Appeal Board (Board). That order reversed a referee's decision in her favor and denied her total disability benefits.

The following facts are pertinent. Claimant was employed as a packer by Pet, Inc.-Whitman's Chocolates (employer), when she suffered a work-related injury to her lower back on September 22, 1978. As a result of that injury, she suffered a temporary total disability from September 22, 1978 until November 19, 1978,

during which time she received total disability benefits. She resumed her duties with the employer on November 20, 1978 but her disability recurred on November 29, 1978 and continued until October 14, 1979. The employer filed a petition to terminate in July, 1979, and on October 14, 1979, Claimant executed a stipulation that all disability had ceased and terminated as to her September 22, 1978 injury and she returned to work on October 15, 1979. On February 13, 1980, while doing heavy lifting assembly work for the employer, Claimant injured her back and neck and again became disabled. She subsequently filed claim petitions seeking a reinstatement of compensation for her September 22, 1978 injury and also seeking total disability benefits as a result of her February 13, 1980 injury. After a number of hearings at which only the Claimant produced any evidence, the referee denied her claim to reinstate benefits due to the September 22, 1978 injury but found her partially disabled due to the February 13, 1980 injury and granted her total disability benefits based upon the employer's failure to show availability of suitable work.[1] The employer appealed the referee's decision to the Board which reversed the referee holding that the Claimant's medical testimony was incompetent and denied her benefits. Claimant then filed a timely petition for review with this Court.

---

[1] Claimant was physically totally disabled from the date of the injury on February 13, 1980, until July of 1980 and was thereafter denied light work which she offered to do. The referee found:

10. Although some light duty jobs existed at Defendant's plant, Defendant refused to make these available to the Claimant in spite of Claimant's repeated requests to do so. Hence, Defendant has not established that lighter work is available which the Claimant can perform. She must therefore be deemed to be totally disabled.

In this appeal, Claimant contends that: (1) the medical testimony presented is competent and sufficient to support the referee's decision in her favor; and (2) her injuries were so immediately, directly and naturally the result of her employment activity that unequivocal medical testimony was not necessary for her to establish the causal link between the February 13, 1980 incident and her total disability.

Critical in our inquiry is the referee's eighth finding of fact, which reads

8. On February 13, 1980 while doing heavy assembly work for the Defendant, Claimant injured her back and neck and suffered a recurrence of total disability. This injury was an aggravation of her earlier injury, and therefore constituted a new injury under the Act. Causation of this injury was established by the testimony of Claimant's physician, Dr. Didizian. Defendant did not present any medical evidence.

In support of this finding, Claimant testified that on February 13, 1980 she was ordered to perform overhead work on a conveyor belt, with repeated bending and stretching resulting in neck and back pain and she reported to the dispensary mid-day, but was told to return to work. By the end of the day her back brace had torn, was cutting into her causing bleeding, all due to the constant flexion and extension required of this work. She suffered severe pain in her neck, low back, and right leg above the knee and these symptoms persisted so that she was unable to work or return to work after that day. She testified as follows:

Q. Now, did you try any further work that day?

A. No, not after that.

THE REFEREE: What caused the breaking or the tearing of the brace?

THE WITNESS: The constant movement up and down and reaching behind me and then grabbing—supplying the machine girls.

THE REFEREE: Now, what happened to you as a result of that?

THE WITNESS: Well, I went to the doctor's—

THE REFEREE: What happened to you as far as injuries, if any?

THE WITNESS: *I was in a great deal of pain down my leg, my back and around my neck.*

BY MR. SIEGERT:

Q. What leg?

A. My right leg?

Q. How far down?

A. From the knee cap down.

THE REFEREE: What caused that pain?

THE WITNESS: I, myself, the constant movement.

THE REFEREE: The constant movement on that job?

THE WITNESS: Yes, and the stretching and reaching.

(Emphasis added.)

Claimant's medical witness, Nouvar A. Didizian, M.D., a Board certified orthopedic surgeon, and Claimant's treating physician, testified with regard to the events on February 13, 1980, as described by claimant as follows:

Q: Now, the cervical spasm, Doctor, in your opinion, how was that caused?

A: Well, any time you have a—you lift a heavy weight, you reach for objects above your head, poor posturing of your arms around when you are lifting an object, can precipitate muscle spasm around the cervical spine.

Q: Now, did she [Claimant] described to you how she was injured?

A: She did.

Q: Would you say that this injury, your findings, were comparable to the injury that she suffered in the accident or the incident she was involved in?

A: I think the kind of occupation that she did would explain the findings on the clinical level.

We have no hesitancy in concluding, as did the referee, that the testimony of Dr. Didizian qualifies as competent opinion in light of the circumstances in this case and treating rationally the language he used. We think his statement that the kind of occupation she described at the time of her injury "would explain the findings on the clinical level," is adequately unequivocal as to causation, in keeping with our decisions such as that a herniated disk would be "consistent with [the] injury" described by claimant, *Westmoreland Casualty Co. v. Workmen's Compensation Appeal Board (Lee)*, 36 Pa. Commonwealth Ct. 307, 387 A.2d 683 (1978), that a myocardial infarction "in all likelihood . . . was related to [claimant's] activities" on a day at work, *Wells/Richard Mfg. Co. v. Workmen's Compensation Appeal Board (Gross)*, 69 Pa. Commonwealth Ct. 179, 450 A.2d 766 (1982), or that a disk herniation was "compatable [sic] with" the injury described, *Astro Remodeling v. Workmen's Compensation Appeal Board (July)*, 80 Pa. Commonwealth Ct. 552, 471 A.2d 1320 (1984); in all of which cases awards were sustained.

Furthermore, we have no doubt that Claimant's second contention must be decided in her favor and that the medical expert's testimony in this case need not be so unequivocal as might otherwise be required. *See Morgan v. Giant Markets, Inc.*, 483 Pa. 421, 397 A.2d 415 (1979).

Accordingly, for the reasons set forth, we will reverse the Board's order and reinstate the award of the referee.

ORDER

Now, April 15, 1986, the order of the Workmen's Compensation Appeal Board at No. A-86734, dated April 12, 1984, is hereby reversed and the decision of Referee Irvin Stander, dated August 4, 1983, is hereby reinstated.

Judge PALLADINO dissents.